25-113
*The New York and Presbyterian Hospital v. New York State Nurses Association*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2025

ARGUED: JANUARY 7, 2026
DECIDED: JULY 7, 2026

Docket No. 25-113

————

NEW YORK PRESBYTERIAN HOSPITAL,
*Plaintiff-Appellant*,

*v.*

NEW YORK STATE NURSES ASSOCIATION,
*Defendant-Appellee*.

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: KEARSE, WALKER, AND NARDINI, *Circuit Judges*.

————

In 2019, Plaintiff-Appellant, the New York and Presbyterian Hospital (the "Hospital"), entered into a collective bargaining agreement with Defendant-Appellee, the New York State Nurses Association (the "Union"). Per this agreement, the Hospital agreed to staff a certain number of registered nurses to the Hospital's Cardio-Thoracic Intensive Care Unit ("CTICU") according to an agreed-upon

No. 25-113

grid. When the Hospital failed to staff the CTICU to grid levels, the Union brought the unit's nurses' grievance against the Hospital to arbitration. The Arbitrator later determined that the Hospital breached the parties' agreement and issued a monetary award (the "arbitral award") to the affected nurses.

In this appeal, the Hospital seeks vacatur of the district court's confirmation of this arbitral award. The Hospital argues that the monetary award issued (1) was not authorized as a potential remedy in the parties' collective bargaining agreement and, in any case, (2) was punitive in nature and therefore violated an alleged public policy forbidding punitive labor arbitration awards. For the reasons explained below, we AFFIRM the district court's confirmation of the arbitral award in favor of Appellee.

————

JOHN HOUSTON POPE (James S. Frank, Laura H. Schuman, *on the brief*), Epstein Becker & Green, P.C., New York, NY, *for* Plaintiff-Appellant.

BRUCE S. LEVINE (Daniel M. Nesbitt, *on the brief*), Cohen, Weiss and Simon LLP, New York, NY, *for* Defendant-Appellee.

————

JOHN M. WALKER, JR., *Circuit Judge*:

In 2019, Plaintiff-Appellant, the New York and Presbyterian Hospital (the "Hospital"), entered into a collective bargaining agreement with Defendant-Appellee, the New York State Nurses Association (the "Union"). Per this agreement, the Hospital agreed to staff a certain number of registered nurses to the Hospital's Cardio-

No. 25-113

Thoracic Intensive Care Unit ("CTICU") according to an agreed-upon grid. When the Hospital failed to staff the CTICU to grid levels, the Union brought the unit's nurses' grievance against the Hospital to arbitration. The Arbitrator later determined that the Hospital breached the parties' agreement and issued a monetary award (the "arbitral award") to the affected nurses.

In this appeal, the Hospital seeks vacatur of the district court's confirmation of this arbitral award. The Hospital argues that the monetary award issued (1) was not authorized as a potential remedy in the parties' collective bargaining agreement and, in any case, (2) was punitive in nature and therefore violated an alleged public policy forbidding punitive labor arbitration awards. For the reasons explained below, we AFFIRM the district court's confirmation of the arbitral award in favor of Appellee.

## BACKGROUND

In 2019, the Hospital and Union entered into an agreement, which was comprised of a Collective Bargaining Agreement ("CBA") that was later modified and extended by a Memorandum of Agreement ("MOA") (together, the "Agreement"). Under the Agreement, the Hospital was required to maintain certain registered nurse staffing levels in the Hospital's CTICU, as outlined in an agreed-upon staffing grid.[1] The grid required two-to-four fewer nurses in the CTICU than the number of patients admitted to the CTICU. Parties could raise staffing disputes under the Agreement via

---

[1] The CBA was effective January 1, 2019 through December 31, 2022, and was amended and extended by an MOA, effective as of January 1, 2023. Among other changes, the MOA modified the staffing grid in the CTICU. *Compare* Joint App'x at 371 (CBA), *with* Joint App'x at 176 (MOA).

No. 25-113

a specified grievance procedure that culminated in the option of submitting their dispute to arbitration.

In June 2023, the Union filed a grievance regarding staffing disparities in the CTICU dating back to January of that year. Five months later, the Union requested arbitration. During arbitration, the Arbitrator set out to resolve the following questions: "Did the Employer violate the collective bargaining agreement with respect to the staffing on the CTICU? If so, what shall be the remedy?" Joint App'x at 41.

At arbitration, the Hospital and the Union did not dispute that staffing in the CTICU fell below the Agreement's required grid levels. The Hospital still argued that it did not violate the Agreement because it made efforts to recruit and hire nurses to fill vacant positions. The Union, on the other hand, maintained that the Hospital's failure to properly staff the CTICU to the agreed-upon grid levels required a "make-whole financial remedy," which would compensate the nurses for the "extra labor [they] expended" while working understaffed. Special App'x at 3. The Hospital countered that such a remedy (1) was precluded by the parties' Agreement and (2) was impermissibly punitive. *Id*. at 4.

On May 22, 2024, after a two-day hearing, the Arbitrator found the Hospital in violation of the parties' Agreement because of the Hospital's failure to staff the CTICU in compliance with the grid. The Arbitrator then issued a monetary award to the Union for the Hospital's breach. In order to calculate the remedy, the Arbitrator determined which nurses in fact worked on an understaffed shift and further narrowed the group of compensable nurses to only those who worked on shifts that were understaffed by three or more nurses. The Arbitrator reasoned that the working conditions faced by nurses who

No. 25-113

worked on such shifts were adverse enough to trigger a financial remedy, declining the Union's request for a monetary remedy for every shift on which fewer nurses were assigned than are prescribed by the grid. To calculate the final award, the Arbitrator divided among those nurses "the amount of money the Hospital would have paid to the number of extra nurses needed to properly staff the shift less 2 (since the Arbitrator declined to award a remedy for shifts understaffed by up to 2)." Joint App'x at 56; *see also id*. at 59–65 (appendix dividing award of approximately $275,000 among understaffed shifts). The Arbitrator stated that this remedy was meant as "compensation to the nurses for the adverse conditions under which they worked, and not a penalty to the Employer." *Id*. at 57. No financial offset was awarded to the Hospital for its recruitment and hiring efforts.

In July and August 2024, the parties cross-moved in the district court for the Southern District of New York (Rochon, *J*.) to vacate or confirm the award. On December 16, 2024, the district court entered judgment denying the Hospital's motion to vacate and granting the Union's cross-motion to confirm the award. On January 14, 2025, the Hospital timely appealed.

## DISCUSSION

The Hospital makes two arguments on appeal: (1) that the Arbitrator did not draw her authority to issue a monetary award from the text of the parties' Agreement; and (2) that the monetary award violated an alleged public policy forbidding punitive awards in labor arbitration.

After carefully considering these arguments, we conclude they lack merit. Accordingly, we affirm the district court's confirmation of the arbitral award.

**I. Whether the Arbitrator Drew Her Remedial Authority from the Parties' Agreement**

"[A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). In assessing the validity of such an award, we only inquire "as to whether the arbitrator acted within the scope of [her] authority as defined by the collective bargaining agreement." *Id.* at 536.

The Hospital principally argues that the Arbitrator's award violated the explicit text of the parties' Agreement.[2] We disagree and, like the district court, find that the Arbitrator did not exceed her authority under the parties' Agreement. Our analysis focuses on two provisions of the Agreement – the "remedial authority" clause and the "zipper" clause.

The Agreement's "remedial authority" clause states that arbitrators who hear disputes unresolved by the Allocation Committee, a dispute resolution committee, "shall have the same remedial authority as an arbitrator under the collective bargaining agreement." Joint App'x at 259 (CBA, Art. 3.04(6)), 142 (MOA, Art. 3.04(7)). In her Opinion and Award, the Arbitrator interpreted this

---

[2] The Hospital also argues that the award violated industry custom. We do not analyze this argument here, however, because we find that the Arbitrator based her award on the text of the Agreement itself. *See Harry Hoffman Printing, Inc. v. Graphic Comms. Int'l Union, Loc. 261*, 950 F.2d 95, 98 (2d Cir. 1991) ("Where it is clear that the arbitrator *must* have based h[er] award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference), the arbitral award cannot stand.") (internal quotation marks omitted) (emphasis in original)).

provision to mean that the parties granted her "remedial authority" under their Agreement. *See id.* at 49–50. The Arbitrator then reasoned that her "remedial authority" allowed her to issue remedies for breach of contract, which could include a "monetary remedy when warranted." *Id.* at 51.

We find that the Arbitrator reasonably interpreted this term in the parties' Agreement. "[T]he principal question for the reviewing court is whether the arbitrator's award draws its essence from the collective bargaining agreement . . . ." *Wackenhut Corp v. Amalgamated Loc. 515*, 126 F.3d 29, 31 (2d Cir. 1997) (internal quotation marks and citation omitted). Here, the Arbitrator interpreted her undefined "remedial authority" to allow for the monetary award she issued, properly drawing from the terms and essence of the agreement. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of [her] authority," which we find that she was, we may not overturn the arbitrator's decision even if we were "convinced [she] committed serious error." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Next, the Arbitrator correctly recognized that her remedial authority was "subject[ed] to any limitations placed on the arbitrator under the empowering collective bargaining agreement." Joint App'x at 50. The Arbitrator found such a limitation in the second relevant provision of the parties' Agreement – its "zipper" clause. *Id.* at 50. The "zipper" clause states that "[t]he arbitrator shall not have any power to add to or subtract from or otherwise amend this Agreement." *Id.* at 327 (CBA, Art. 14.07). There were no other limitations on her authority in the Agreement.

The Arbitrator was not bound by provisions in earlier versions of the parties' agreement either, even if those provisions previously

limited the remedies she could issue. The Arbitrator correctly recognized that while a 2015-2018 version of the CBA contained a limiting provision which stated that "[t]he sole remedy the arbitrator is empowered to award is a directive to the Hospital to adhere to the established staffing guidelines," the parties' current Agreement did not include such language. *Id*. at 50. The arbitrator's remedial authority under the parties' current Agreement was not otherwise constrained.

A court may vacate a labor arbitration award if it "contradicts an express and unambiguous term of the contract or . . . so far departs from the terms of the agreement that it is not even arguably derived from the contract." *N.Y.C. & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016) (internal quotation marks and citation omitted). That did not happen here. The monetary award the Arbitrator fashioned did not violate the agreement's "zipper clause" by "add[ing] to or subtract[ing] from or otherwise amend[ing]" the parties' agreement. *See* Joint App'x at 327 (CBA, Art. 14.07). While the Arbitrator used the parties' agreed-upon wage rate as a benchmark to calculate the cost of working in an understaffed environment, the Arbitrator did not permanently adjust wages in the contract or derive a new contract term, as the Hospital contends. Rather, the Arbitrator issued a temporary remedy for the Hospital's breach of contract which drew upon the Agreement itself. It cannot be said, then, that the award violated the Agreement's only limitation – the "zipper" clause.

Ultimately, while an "arbitrator's decision must draw its essence from the agreement," arbitrators are "'to bring [their] informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies.*'"

*Misco,* 484 U.S. at 41 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)) (emphasis in original). The solution the Arbitrator came up with was a fair one. The Arbitrator did not reward the Hospital for its own administrative shortcomings while its CTICU nurses otherwise bore the burden of working on understaffed shifts. The Arbitrator's award was properly derived from and did not go beyond the limited text of the parties' Agreement. As a result, we grant deference to the Arbitrator's interpretation of the Agreement.

The Hospital argues that two other hospital systems explicitly permit penalties as remedies in arbitration, but the Hospital "fought hard not to include such language in this Agreement." Joint App'x at 42; *see* Appellant's Br. at 47–48. Even if the Hospital successfully removed "penalty language" from the Agreement, that was not enough to prevent either a penalty or a compensatory monetary award from issuing here. Joint App'x at 42. The Arbitrator was bound by the contract before her, and that Agreement contained no language limiting what remedies she could award. Instead, the parties left this question open for interpretation, effectively "let[ting] the arbitrator decide." *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 45 (2d Cir. 1997). "It is not for us to second-guess that choice or to judicially rewrite the agreement because one party now wishes it were different." *Id.*; *see also id.* (finding that a collective bargaining agreement, which failed to define a key term, left that term's definition to the arbitrator). "The remedy for unduly broad arbitral powers is not judicial intervention: it is for the parties to draft their agreement to reflect the scope of power they would like their arbitrator to exercise." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 345 (2d Cir. 2010). If the Hospital wished, it could have insisted on language in the collective bargaining process expressly prohibiting any monetary awards.

"[W]here an arbitrator explains h[er] conclusions 'in terms that offer even a barely colorable justification for the outcome reached,'" as was done here, "'confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.'" *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 717 (2d Cir. 1998) (quoting *Saint Mary Home, Inc.*, 116 F.3d at 44). The Arbitrator's conclusion about what remedies she was authorized to issue was drawn from the terms in the parties' Agreement and, as such, provided sufficient justification for the outcome she reached. The Hospital failed to otherwise explicitly limit this authority.

## II. Whether the Award Was Punitive

Unlike a review of arbitral award's merits, where there must be a strong deference to the arbitrator, the question of whether an award violated public policy "is ultimately one for resolution by the courts." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). "[A] court's task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, 'create[s] [an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy." *Niagara Mohawk Power Corp.*, 143 F.3d at 716 (quoting *Misco*, 484 U.S. at 43).

The Hospital argues that there exists a public policy against awarding punitive damages as a labor arbitration award. But "[r]itualistic incantations of 'punitive damages' will not suffice to vacate an arbitration award[.]" *John T. Brady & Co. v. Form-Eze Sys., Inc.*, 623 F.2d 261, 264 (2d Cir. 1980) (other internal quotation marks omitted). Before considering whether such a public policy exists, we

must first assess whether the Arbitrator's monetary award was punitive to begin with. *Misco*, 484 U.S. at 43 (holding that a violation of public policy "must be clearly shown if an award is not to be enforced"). Even assuming, *arguendo*, that such a public policy exists, the Hospital's challenge on this basis fails because the award was plainly compensatory—not punitive—in its purpose and structure.

Our analysis of whether the award was compensatory or punitive looks to the Arbitrator's subjective intent in issuing the award and the objective nature of the award. *See, e.g.*, *John T. Brady*, 623 F.2d at 264 (deeming an arbitral award compensatory because the arbitrator "did not label" the award as "punitive" and "nor [wa]s there anything to indicate a genuine intention that the award be punitive" and noting another case that found an award was compensatory when "discretion [wa]s used in the computation of damages") (other internal quotation marks omitted).

The record shows that the Arbitrator's explicit intent was to issue a "make-whole" compensatory remedy, not a punitive one. *See Synergy Gas Co. v. Sasso*, 853 F.2d 59, 65–66 (2d Cir. 1988) (observing that an award was compensatory in part because the arbitrator stated he was "attempting to make the union whole"). The Arbitrator consistently described her award as intended to compensate the nurses for their excessive workload caused by the Hospital's contract violations. *See* Joint App'x at 51–52 ("[A] monetary remedy is appropriate to *remunerate* nurses for working under the adverse conditions of an understaffed shift") (emphasis added); *id.* at 55 ("[A] monetary remedy is appropriate to *compensate* the nurses . . .") (emphasis added); *id.* at 57 ("[T]he monetary remedy is *compensation* to the nurses . . . and not a penalty to the Employer . . .") (emphasis added). While it is true that the Arbitrator concluded her opinion by directing the Hospital to "continue its efforts to recruit and retain

11

sufficient nurses to staff the CTICU in accordance with the grid," which the Hospital argues is evidence of the award's coercive nature, this direction was separate from her reasoning behind issuing a monetary award. *Id.* at 57. To the extent the award may have incentivized the Hospital to act in compliance with the agreement, such an effect was not the Arbitrator's intention in issuing the award. The record reflects that the Arbitrator's intent was to provide a compensatory remedy to the affected nurses for the burden of managing a higher patient load, rather than to punish the Hospital.

The award was compensatory not only in the Arbitrator's intent but, we note, also in how it was structured. The Arbitrator tailored the monetary award to make the impacted nurses whole for the harm they suffered. The award was "a reasonable estimate of the monetary value of the additional burden placed on the nurses during the understaffed shifts." *Id.* at 30. Further, the remedy was "not clearly punitive because the Arbitrator made specific factual findings regarding the nurses' harms and tailored a monetary remedy to compensate for those harms." *Id.* at 29. The award was compensatory by design.

## CONCLUSION

For the forgoing reasons, we AFFIRM the district court's confirmation of the arbitral award.

12